# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **KELLY STAPLEY,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**MINNESOTA LIFE INSURANCE CO.,**<br><br>**Defendant.** | **MEMORANDUM DECISION AND ORDER DENYING IN PART AND GRANTING IN PART MOTION TO EXCLUDE TESTIMONY OF DR. ROTHFEDER**<br><br>**Case No. 2:17-cv-653**<br><br>**Judge Clark Waddoups** |

Before the court is Defendant Minnesota Life Insurance Co.'s Motion to Exclude Testimony of Dr. Robert Rothfeder (ECF No. 32). The motion has been fully briefed, and the court heard argument on the same on April 17, 2019. Having reviewed the pleadings and materials submitted and considered the arguments of counsel, the court now enters this order **DENYING IN PART AND GRANTING IN PART** Defendant's motion.

## BACKGROUND

Plaintiff is the daughter of the late Conrad Jahries. (ECF No. 2, at ¶ 1, Compl.) Mr. Jahries died in his home on October 17, 2015, at the age of 84. *Id.* at ¶ 5. His body was found by his hospice nurse, Penny Johnson, who is now deceased. Nurse Johnson reported that she found Mr. Jahries "in the doorway to his bathroom . . . with his head against the door jam [sic]" and with "copious amounts of dried blood coming from his mouth and nose." (ECF No. 32-3.) No one witnessed Mr. Jahries's death, and an autopsy was not performed on his body. On Mr. Jahries's death certificate, his cause of death was attributed to a stroke. (ECF No. 33-7.)

Mr. Jahries was the owner of an accidental death and dismemberment insurance policy (the "Policy), which Defendant sold to him. (ECF No. 2, at ¶ 6, Compl.) Plaintiff is the

beneficiary of the Policy. The Policy states that Defendant will only provide benefits "when the insured's loss results directly—and independently—from all other causes, from an accidental bodily injury which was unintended, unexpected and unforeseen." (ECF No. 33-2, at p. 4.) The Policy further states that "[t]he bodily injury must be evidenced by a visible contusion or wound" and that it "must be the sole cause of the insured's loss." *Id.* The Policy excludes payment "where the insured's loss or injury is caused directly or indirectly by, results from, or there is contribution from . . . bodily or mental infirmity, illness or disease . . . ." *Id*. at p. 5.

Plaintiff made a claim under the Policy. By letter dated May 25, 2016, Defendant denied Plaintiff's claim because Mr. Jahries's death was "caused directly or indirectly by, resulted from or there was contribution from bodily or mental infirmity, illness or disease." (ECF No. 33-10, at p. 2.) Defendant's denial letter further stated that it had not been provided any information to support the conclusion that Mr. Jahries's death resulted from an accidental bodily injury. *Id.* On March 17, 2017, Plaintiff, through her counsel, sent Defendant a letter appealing its denial and offering evidence to support her assertion that Mr. Jahries's death was the result of an accidental bodily injury. (ECF No. 33-12.) Enclosed with this letter were: 1) a statement prepared by Nurse Johnson, stating that she found Mr. Jahries "in the doorway to his bathroom . . . with his head against the door jam [sic]" and with "copious amounts of dried blood coming from his mouth and nose" and a letter written by Dr. Rothfeder, stating that it was his "medical opinion in this matter is that Mr. Jahries suffered a slip and fall ambulating to the bathroom, blunt cranial trauma, and a fatal traumatic brain injury" and that he "found no evidence that any of Mr. Jahries' [sic] chronic medical conditions contributed in any way to his sudden death." *Id.*

Defendant received and reviewed Mr. Jahries's medical records and referred the file to its own doctor, Dr. Dennis Lee. Dr. Lee opined that the available records were both "consistent and

supportive" of the cause of death listed on the death certificate (a stroke) and "supportive of a medical event that cause[d] Mr. Jahries to collapse and be later found deceased." (ECF No. 33-16, at p. 2–3.) Defendant therefore upheld its denial of Plaintiff's claim.

Plaintiff thereafter initiated this action, seeking payment of benefits and asserting that Defendant breached the Policy and acted in bad faith in handling and denying its claim. The parties have conducted discovery, including the depositions of Dr. Rothfeder, Dr. Lee, and Dr. Joseph, who was the hospice physician who signed Mr. Jahries's death certificate. Dr. Rothfeder's testimony and reports focus on three separate opinions: 1) that Mr. Jahries fell as a result of slipping or tripping; 2) that the fall caused Mr. Jahries to suffer blunt cranial trauma and a fatal traumatic brain injury; and 3) that none of Mr. Jahries's medical conditions contributed in any way to his death. (*Id.*; ECF No. 39-3 at p. 10.) These opinions, and the information that Dr. Rothfeder relied on in reaching them, are the focus of Defendant's motion to exclude.

## ANALYSIS

Defendant provides three arguments as to why Dr. Rothfeder's testimony should be excluded: first, because it is based off the hearsay of Nurse Johnson; second, because Dr. Rothfeder is not qualified to offer an opinion about the cause of the trip and fall that he alleges Mr. Jahries suffered; and third, because it is unreliable.

A. The court cannot find that Nurse Johnson's statements are inadmissible hearsay.

Defendant first argues that Dr. Rothfeder's testimony should be excluded because it is based off the hearsay statements of Nurse Johnson. Defendant also argues, in the alternative, that if Dr. Rothfeder is allowed to testify, he should be excluded from offering these hearsay statements to support his testimony. Two statements made by Nurse Johnson are at issue. The first is her written memo in which she stated that she found Mr. Jahries "in the doorway to his bathroom . . . with his head against the door jam [sic]" and with "copious amounts of dried blood

3

coming from his mouth and nose." (ECF No. 32-3.) The second are statements that she made to

Dr. Rothfeder during a November 7, 2017 telephone conversation. Dr. Rothfeder took notes of

this conversation, which indicate that Nurse Johnson told him that there was no imminent risk to

Mr. Jahries's health, that he was a "major fall risk" and "was supposed to use a walker or cane to

ambulate," and that on October 17, 2015, she "found him on the floor with his head against the

[bathroom] door jamb, obviously moribund [with] a lot of blood on his face, apparently from the

mouth and nose, with no obvious laceration." (ECF No. 32-4.) These notes further state that

Nurse Johnson's "assumption was that [Mr. Jahries] had ambulated to the [bathroom] without his

walker and had taken a fall striking his head on the way down." *Id.*

Defendant asserts that these statements are "classic hearsay" under Rule 801 of the

Federal Rules of Evidence. The court agrees; Nurse Johnson's statements were made out of

court and are now being offered for their truth—that Nurse Johnson found Mr. Jahries's body

lying with his head against the bathroom door jamb and that she assumed he had fallen while

walking to the bathroom and died as a result of hitting his head. Plaintiff responds that the

statements are nonetheless admissible under Rule 803(4)'s exception for statements made for

medical treatment. Rule 803(4) only applies to "'statements made by the one actually seeking or

receiving medical treatment'" and is therefore inapplicable to statements that Nurse Johnson

made concerning Mr. Jahries's heath. *Cardall v. Thompson*, 845 F. Supp. 2d 1182, 1187, n.3 (D.

Utah 2012) (quoting *Field v. Trigg County Hosp., Inc.*, 386 F.3d 729 (6th Cir.2004)).

The court cannot, however, rule as a matter of law that Nurse Johnson's statements would

not be admitted under either Rule 804 or 807. Rule 804(4) makes admissible an unavailable

witness's statement regarding another's death "if the declarant . . . was so intimately associated

with the person's family that the declarant's information is likely to be accurate." FED. R. EVID.

804(4)(B). Testimony was offered at the April17 hearing to show that Nurse Johnson became close with Mr. Jahries's family after his death and before she made her statements. Nurse Johnson clearly had personal knowledge of the information that she wrote into her memo and discussed with Dr. Rothfeder, and there is no reason to doubt that information's accuracy.

Under Rule 807, a hearsay statement is admissible if 1) it "has equivalent circumstantial guarantees of trustworthiness;" 2) "it is offered as evidence of a material fact;" 3) "it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts;" and 4) "admitting it will best serve the purposes of these rules and the interests of justice." FED. R. EVID. 807. Nurse Johnson's statements satisfy all four categories. First, she is simply stating what she observed as the medical professional who found Mr. Jahries's body; there is nothing to suggest that her statements are untrustworthy. Second, the statements are offered for a material fact—the state and positioning of Mr. Jahries's body when she found it. Third, it is the only evidence of this fact, as Nurse Johnson was the one who found Mr. Jahries's body and was the only witness to see the volume of blood he lost, since she cleaned up the scene for the sake of his family. (ECF No. 32-4, at p. 2.) Further, because Nurse Johnson is now deceased, these statements are the only evidence that exists as to her observations. Fourth, Plaintiff's assertion that Mr. Jahries's death was accidental and therefore covered by the Policy is highly, if not exclusively, dependent on the evidence contained in Nurse Johnson's statements. Given that Nurse Johnson's statements are the only form of this evidence, a just determination of this case requires that they not be excluded. *See* FED. R. EVID. 102. Because the court cannot determine as a matter of law that Nurse Johnson's statements are inadmissible hearsay, it will not exclude Dr. Rothfeder's testimony for relying on them. The court similarly cannot, at this point, bar Dr. Rothfeder from offering those statements to support his testimony.

B. Dr. Rothfeder is not qualified to opine as to the mechanism of Mr. Jahries's fall and is therefore barred from offering testifying as to the cause of that fall.

Under Rule 702 of the Federal Rules of Evidence, an expert witness is permitted to offer testify as to topics who which he has "scientific, technical, or other specialized knowledge." Dr. Rothfeder practiced emergency medicine for thirty years and is therefore qualified to offer opinions as to an individual's cause of death. However, some of the opinions he offers in this case extend beyond his qualifications. Again, Dr. Rothfeder offers three opinions: 1) that Mr. Jahries fell as a result of slipping or tripping; 2) that the fall caused Mr. Jahries to suffer blunt cranial trauma and a fatal traumatic brain injury; and 3) that none of Mr. Jahries's medical conditions contributed in any way to his death. (ECF No. 39-3 at p. 10; ECF No. 32-1, at p. 4.)

Dr. Rothfeder's experience in emergency medicine, coupled with his review of Mr. Jahries's medical records, qualifies him to offer his second and third opinions. His experience even qualifies him to opine that Mr. Jahries fell because people of his age often do. (*See* ECF No. 39-2, at 48:20–61:25.) His experience does not, however, qualify him to give his first opinion—that Mr. Jahries fell because he "slipped."[1] Understanding, and offering an opinion as to, the mechanism and cause of Mr. Jahries's fall does not require medical expertise; it requires expertise in forensic investigation. Dr. Rothfeder is not an expert in forensics and cannot therefore opine as to the cause of Mr. Janries's fall. Dr. Rothfeder acknowledged his inadequacy in this area during his deposition, where he admitted that he does not have "any idea about the mechanism of [Mr. Jahries's] fall" as "there really wasn't a forensic investigation at the scene from which to further opine." (ECF No. 39-2 at 61:22–25.) Dr. Rothfeder is not qualified to

---

[1] Dr. Rothfeder uses the terms "slipped" and "tripped" interchangeably. In his deposition, when pressed regarding his conclusion that Mr. Jahries "suffered a slip and fall accident, he responded "Slip and fall, trip and fall. A fall." and clarified that his opinion was really that Mr. Jahries "fell down because he either slipped on something or he tripped on something." (*See* ECF No. 39-2 at 61:14–19.)

testify as to the cause of Mr. Jahries's fall, and his opinion that Mr. Jahries fell because he slipped or tripped is therefore barred.

C. <u>While Dr. Rothfeder's testimony as to the cause of Mr. Jahries's fall is unreliable and inadmissible, he may testify as to Mr. Jahries's cause of death and whether Mr. Jahries's other medical conditions contributed to his death.</u>

Defendant also asserts that Dr. Rothfeder's testimony should be excluded because it is unreliable. To be admissible, an expert's opinion "'must be based on facts which enable [him] to express a reasonably accurate conclusion as opposed to conjecture or speculation . . . .'" *Goebel v. Denver & Rio Grande W. R. Co.*, 346 F.3d 987, 991 (10th Cir. 2003) (quoting *Gomez v. Martin Marietta Corp.,* 50 F.3d 1511, 1519 (10th Cir.1995)).

As discussed above, Dr. Rothfeder's first opinion, that Mr. Jahries slipped or tripped, is inadmissible because Dr. Rothfeder is not qualified to offer it. The court also finds that this opinion is pure conjecture and unsupported by the record, as is shown in the following exchange from Dr. Rothfeder's deposition:

```
14        Q.    Okay.  So, in this particular case, you concluded
15   that Mr. Jahries suffered a slip and fall accident?
16        A.    Slip and fall, trip and fall.  A fall.
17        Q.    But you're suggesting that he fell down because
18   he either slipped on something or he tripped on something?
19        A.    That's correct.
20        Q.    What did he slip on or trip on?
21        A.    I don't know.
22        Q.    You do not have any idea about the mechanism of
23   the fall?
24        A.    I don't.  There really wasn't a forensic
25   investigation at the scene from which to further opine.
```

(ECF No. 39-2 at 61:14–25.)  Dr. Rothfeder suggests that Nurse Johnson's statements support his opinion that Mr. Jahries slipped, but neither Nurse Johnson's written statement nor his notes from their conversation suggest that she gave an opinion as to what caused Mr. Jahries to fall. (*See* ECF Nos. 32-3 & 32-4.)  Rather, his notes only state that it was Nurse Johnson's "assumption" that Mr. Jahries had "taken a fall striking his head on the way down."  (ECF No. 32-4, at p. 2.)  Dr. Rothfeder has no basis for his conclusion that Mr. Jahries slipped or tripped. That opinion is therefore unreliable and inadmissible.  While Dr. Rothfeder may state that Mr. Jahries fell, he cannot offer an opinion as to what caused that fall.

Dr. Rothfeder's second opinion, that Mr. Jahries's fall caused him to suffer blunt cranial trauma and a fatal traumatic brain injury, does not suffer from the same inadequacies.  As discussed above, Dr. Rothfeder's experience in emergency medicine qualifies him to testify as to an individual's cause of death.  Here, he relies on that experience to opine that Mr. Jahries died as the result of blunt trauma and a fatal traumatic brain injury.  In reaching this opinion, he relied on Nurse Johnson's statement that she found Mr. Jahries "with his head against the door jam [sic]" with "copious amounts of dried blood coming from his mouth and nose."  (ECF No. 32-3.) In both his written report and deposition, Dr. Rothfeder testified that in his experience, this evidence made it unlikely that Mr. Jahries died from a stroke.  (ECF No. 32-1, at p. 5; ECF No. 39-2, at p. 68:19–79:5.)  While Dr. Rothfeder's support for his opinion might be slight, it is enough to "enable [him] to express a reasonably accurate conclusion as opposed to conjecture or speculation . . . ."  *Goebel*, 346 F.3d at 991 (quoting *Gomez,* 50 F.3d at 1519).

Dr. Rothfeder's third opinion, that none of Mr. Jahries's medical conditions contributed in any way to his death, similarly survives Defendant's motion to exclude.  Dr. Rothfeder testified that Mr. Jahries's death was a surprise and that "he wasn't in bad shape for his age."

(ECF No. 39-2, at p. 80:14–82:6.)  As such, he relied on statements made by Nurse Johnson that Mr. Jahries's "vital signs were excellent the day prior to his death" and that she "had no expectation of imminent death" and applied his medical experience to those facts to reach the opinion that Mr. Jahries's death was sudden and solely caused by the hitting his head after he fell.  (ECF No. 32-1, at p. 5.)  Again, while this support is slight, it is nonetheless sufficient to allow Dr. Rothfeder to testify.  Defendant's attacks on Dr. Rothfeder's opinion are more appropriate for cross examination.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.")

## CONCLUSION

For the reasons stated above, the court **HERBY DENIES IN PART AND GRANTS IN PART** Defendant's Motion to Exclude Testimony of Dr. Robert Rothfeder (ECF No. 32).  While Dr. Rothfeder may offer testimony that Mr. Jahries fell, that the fall caused him to suffer blunt cranial trauma and a fatal traumatic brain injury, and that that none of his medical conditions contributed in any way to his death, Dr. Rothfeder is **HEREBY EXCLUDED** from offering any opinion or testimony as to the cause of Mr. Jahries's fall.

DATED this 8th day of May, 2019.

BY THE COURT:

Clark Waddoups
United States District Judge