# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **KELLY STAPLEY,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**MINNESOTA LIFE INSURANCE CO.**,<br><br>**Defendant.** | **MEMORANDUM DECISION AND ORDER DENYING IN PART AND GRANTING IN PART MOTION FOR SUMMARY JUDGMENT**<br><br>**Case No. 2:17-cv-653**<br><br>**Judge Clark Waddoups** |

Before the court is Defendant Minnesota Life Insurance Co.'s Motion for Summary Judgment (ECF No. 33). The motion has been fully briefed, and the court heard argument on the same on April 17, 2019. Having reviewed the pleadings and materials submitted and considered the arguments of counsel, the court now enters this order **DENYING IN PART AND GRANTING IN PART** Defendant's motion.

## BACKGROUND

Plaintiff is the daughter of the late Conrad Jahries. (ECF No. 2, at ¶ 1, Compl.) Mr. Jahries died in his home on October 17, 2015, at the age of 84. *Id.* at ¶ 5. His body was found by his hospice nurse, Penny Johnson, who is now deceased. Nurse Johnson reported that she found Mr. Jahries "in the doorway to his bathroom . . . with his head against the door jam [sic]" and with "copious amounts of dried blood coming from his mouth and nose." (ECF No. 32-3.) No one witnessed Mr. Jahries's death, and an autopsy was not performed on his body. On Mr. Jahries's death certificate, his cause of death was attributed to a stroke. (ECF No. 33-7.)

Mr. Jahries was the owner of an accidental death and dismemberment insurance policy (the "Policy), which Defendant sold to him. (ECF No. 2, at ¶ 6, Compl.) Plaintiff is the

beneficiary of the Policy. The Policy states that Defendant will only provide benefits "when the insured's loss results directly—and independently—from all other causes, from an accidental bodily injury which was unintended, unexpected and unforeseen." (ECF No. 33-2, at p. 4.) The Policy further states that "[t]he bodily injury must be evidenced by a visible contusion or wound" and that it "must be the sole cause of the insured's loss." *Id.* The Policy excludes payment "where the insured's loss or injury is caused directly or indirectly by, results from, or there is contribution from . . . bodily or mental infirmity, illness or disease . . . ." *Id*. at p. 5.

Plaintiff made a claim under the Policy. By letter dated May 25, 2016, Defendant denied Plaintiff's claim because Mr. Jahries's death was "caused directly or indirectly by, resulted from or there was contribution from bodily or mental infirmity, illness or disease." (ECF No. 33-10, at p. 2.) Defendant's denial letter further stated that it had not been provided any information to support the conclusion that Mr. Jahries's death resulted from an accidental bodily injury. *Id.* On March 17, 2017, Plaintiff, through her counsel, sent Defendant a letter appealing its denial and offering evidence to support her assertion that Mr. Jahries's death was the result of an accidental bodily injury. (ECF No. 33-12.) Enclosed with this letter were: 1) a statement prepared by Nurse Johnson, stating that she found Mr. Jahries "in the doorway to his bathroom . . . with his head against the door jam [sic]" and with "copious amounts of dried blood coming from his mouth and nose" and a letter written by Dr. Rothfeder, stating that it was his "medical opinion in this matter is that Mr. Jahries suffered a slip and fall ambulating to the bathroom, blunt cranial trauma, and a fatal traumatic brain injury" and that he "found no evidence that any of Mr. Jahries' [sic] chronic medical conditions contributed in any way to his sudden death." *Id.*

Defendant received and reviewed Mr. Jahries's medical records and referred the file to its own doctor, Dr. Dennis Lee. Dr. Lee opined that the available records were both "consistent and

supportive" of the cause of death listed on the death certificate (a stroke) and "supportive of a medical event that cause[d] Mr. Jahries to collapse and be later found deceased." (ECF No. 33-16, at p. 2–3.) Defendant therefore upheld its denial of Plaintiff's claim.

Plaintiff thereafter initiated this action, seeking payment of benefits and asserting that Defendant breached the Policy and acted in bad faith in handling and denying its claim. The parties have conducted discovery, including the depositions of Dr. Rothfeder, Dr. Lee, and Dr. Joseph, who was the hospice physician who signed Mr. Jahries's death certificate. Plaintiff also disclosed a report prepared by Dr. Rothfeder stating that his "medical opinion in this matter is that Mr. Jahries suffered a slip and fall ambulating to the bathroom, blunt cranial trauma, and a fatal traumatic brain injury" and that he "found no evidence that any of Mr. Jahries' [sic] chronic medical conditions contributed in any way to his sudden death." (ECF No. 32-1, at p. 3.)

**ANALYSIS**

Summary judgment is proper when the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(A). A material fact is one that may affect the outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Id.* The court must "view the evidence and draw reasonable inferences therefrom in a light most favorable to the nonmoving party." *Commercial Union Ins. Co. v. Sea Harvest Seafood Co.*, 251 F.3d 1294, 1298 (10th Cir. 2001).

Defendant argues that it is entitled to summary judgment on Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Much of Defendant's motion relies on its contemporaneously-filed motion to exclude testimony of Dr. Rothfeder (ECF No. 32) being granted, but the court recently denied that motion in part, allowing Dr. Rothfeder to offer testimony that Mr. Jahries fell and died as the exclusive result of that fall. (ECF No. 49.) Such testimony, if believed by the jury, "may affect the outcome of the litigation" and therefore creates genuine issues of material fact that preclude Defendant from being granted summary judgment. *See Anderson*, 477 U.S. at 248.

    A. <u>Defendant is not entitled to summary judgment on Plaintiff's claim for breach of contract.</u>

Defendant argues that it is entitled to summary judgment on Plaintiff's claim for breach of contract because, as a matter of law, Plaintiff cannot establish the elements of a covered loss under the Policy and because Mr. Jahries's death is explicitly excluded under the Policy.

Defendant asserts, and for purposes of this motion Plaintiff does not contest, that Plaintiff must prove four elements in order to prevail on her breach of contract claim and recover under the Policy: 1) Mr. Jahries died directly from a blunt cranial trauma suffered in a slip-and-fall; 2) Mr. Jahries died from a blunt cranial trauma independently from all other causes; 3) the blunt cranial trauma was evidenced by a visible contusion or wound; and 4) the blunt cranial trauma was the sole cause of death. Defendant argues that there is no evidence in the record to support any of these findings, but Dr. Rothfeder's opinions cover each.

Dr. Rothfeder's opinion that Mr. Jahries fell, struck his head, and suffered blunt cranial trauma and a fatal traumatic brain injury satisfies the first element. (ECF No. 32-1, at p. 4–5.) Although Dr. Rothfeder is precluded from offering expert testimony as to the cause of Mr. Jahries's fall (ECF No. 49), the evidence is clear that Mr. Jahries did in fact fall. Nurse Johnson found him on the ground "with his head against the door jam [sic]." (ECF No. 32-3.) The cause

of his fall is an open, and material, question of fact that must be decided by the jury. The second and fourth elements are satisfied by Dr. Rothfeder's testimony and opinion that Mr. Jahries's death was sudden and not contributed to by any of medical conditions. Those opinions are supported by his medical experience, his opinion that Mr. Jahries "wasn't in bad shape for his age," and his reliance on Nurse Johnson's representations that Mr. Jahries's "vital signs were excellent the day prior to his death." (ECF No. 32-1, at p. 5; ECF No. 39-2, at p. 68:19–82:6.) Finally, the third element requiring a visible contusion or wound is met by Dr. Rothfeder's report which shows that Mr. Jahries was found with "copious amounts of dried blood coming from his mouth and nose." (ECF No. 32-3.) Dr. Rothfeder's reports, opinions, and testimony address each of these necessary elements, and when accepted as true, establish that Plaintiff can prove her case for breach of contract.

Defendant next argues that Mr. Jahries's death is explicitly excluded by the Policy, which does not cover losses caused or contributed to by bodily infirmity, illness, or disease. Defendant argues that Mr. Jahries had a number of medical conditions that caused him to become weak and fall leading up to his death and that Plaintiff cannot show that these conditions did not contribute to Mr. Jahries's fall here. This argument is similar to Defendant's assertions that Plaintiff cannot satisfy the second and fourth elements above, and it fails for the same reasons—Dr. Rothfeder's opinion offers a basis for the jury to find that Mr. Jahries's fall was the sole cause of his death. Defendant's motion for summary judgment on Plaintiff's claim for breach of contract is denied.

B. <u>Defendant is not entitled to summary judgment on Plaintiff's claim that its investigation of her claim breached the implied covenant of good faith and fair dealing.</u>

Plaintiff alleges that Defendant breached the implied covenant of good faith and fair dealing and acted in bad faith in denying her claim under the Policy. Under Utah law, an insurer is entitled to challenge claims that are "fairly debatable" and "cannot be held to have breached

5

the implied covenant if it chooses to do so." *Billings v. Union Bankers Ins. Co.*, 918 P.2d 461,465 (Utah 1996). Here, the varied opinions as to Mr. Jahries's cause of death and the open question as to what caused him to fall make this claim "fairly debatable" and therefore preclude Plaintiff from establishing its claim of bad faith for denial. *Callioux v. Progressive Ins. Co.*, 745 P.2d 838, 842 (Utah Ct. App. 1987) ("If the evidence presented creates a factual issue as to the claim's validity, there exists a debatable reason for denial, thereby legitimizing the denial of the claim, and eliminating the bad faith claim.") Defendant is therefore entitled to summary judgment on Plaintiff's claim that its initial denial of her claim breached the implied covenant of good faith and fair dealing.

However, Plaintiff also alleges that Defendant acted in bad faith by delaying its investigations into her claim for months, by failing to collect evidence for months, and by failing to interview important witnesses. Plaintiff asserts that it was not until she was forced to hire Dr. Rothfeder that Defendant requested Mr. Jahries's medical records and completed a thorough review of her claim. Defendant argues that the reliable information it initially received, mainly Mr. Jahries's death certificate stating that he died from a stroke and his fall questionnaire showing he had a history of medically-caused falls, was conclusive and established that no further inquiry or investigation was required to evaluate Plaintiff's claim.

Under Utah law, "'when confronted with a claim for benefits by a first-party insured, the insurer must '"diligently investigate the facts . . . fairly evaluate the claim, and . . . act promptly and reasonably in rejecting or settling the claim.'" *Billings*, 918 P.2d at 465 (emphasis and omissions in original) (quoting *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 801 (Utah 1985)). Thus, Plaintiff's bad faith claim asks whether Defendant fairly evaluated Plaintiff's claim by relying on the initial documents it received and whether Defendant's investigations and

evaluations into her claim were prompt and reasonable. Based on the evidence before it, the court cannot answer these questions as a matter of law—they are for the jury to decide. Defendant is not therefore entitled to summary judgment on Plaintiff's claim that the manner by which Defendant investigated, or failed to investigate, her claim, and the time that Defendant took to complete its investigation, breached the implied covenant of good faith and fair dealing.

## CONCLUSION

For the reasons stated above, the court **HERBY DENIES IN PART AND GRANTS IN PART** Defendants' Motion for Summary Judgment (ECF No. 33). Defendant is **GRANTED** summary judgment on Plaintiff's claim that it breached the implied covenant of good faith and fair dealing by initially denying Plaintiff's claim under the Policy. Defendant's motion for summary judgment is **DENIED** as to Plaintiff's claim for breach of contract and her claim that Defendant breached the implied covenant of good faith and fair dealing by delaying, and failing to conduct, its investigation into and evaluation of her claim under the Policy.

DATED this 8th day of May, 2019.

BY THE COURT:

Clark Waddoups
United States District Judge